Barger v. French.

---

No. 27,017.

Earl J. Barger, *Appellee,* v. Fred C. French, Chairman, etc., et al., *Appellants.*

SYLLABUS BY THE COURT.

1. Religious Societies—*Power to Accept Conditional Gifts.* The fact that a religious corporation is not authorized by the provisions of its charter, and the statutes under which it is incorporated, to deal in annuities, does not bar it from accepting a gift conditioned on its paying to the donor a stated sum annually, or periodically, for a stated, or determinable time, and complying with such conditions.

2. Gifts—*Rescission of Conditional Gift—Right to Jury Trial.* An action to rescind a transaction, claimed by defendants to be a gift on conditions, and to recover property transferred to defendants, or its proceeds, because of the alleged mental incapacity of the grantor, and the fraud and undue influence of the grantee, is a suit in equity, in which the parties are not entitled to a jury as a matter of right.

Appeal from Reno district court; William G. Fairchild, judge. Opinion filed February 12, 1927. Reversed.

Cancellation of Instruments, 9 C. J. pp. 1159 n. 6, 1257 n. 42. Gifts, 28 C. J. p. 654 n. 29. Juries, 35 C. J. p. 159 n. 33. Pleading, 31 Cyc. pp. 83 n. 22, 84 n. 29. Religious Societies, 34 Cyc. p. 1155 n. 86.

*A. C. Malloy, R. C. Davis, Warren H. White* and *H. F. Brown,* all of Hutchinson, for the appellants.

*Frank L. Martin* and *James N. Farley,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by an executor to recover from defendants, trustees of the Church of Christ of Hutchinson, the value of property alleged to have been wrongfully obtained from the testator, and which defendants had converted into money. A jury, called to try the case, was unable to agree and was discharged. Plaintiff then moved for judgment upon the pleadings, the admissions and stipulation at the trial, the undisputed evidence, and upon all the evidence, "the case having been fully tried and all the facts and evidence now before the court." This motion was sustained and judgment was rendered for plaintiff. Defendants have appealed.

The facts giving rise to the litigation are substantially as follows: In December, 1922, Margaret J. Denning was the owner, and in actual possession, of a certain residence property in Hutchinson of the value of $5,000. She was past 80 years of age, and alone; she had no children, and her husband had died recently. Her health was not good—in fact was so poor she needed an attendant—perhaps her mental faculties were failing, and she had but little knowledge of business matters. The record does not disclose that she had any property of consequence other than the residence above mentioned. She and her husband had been members for many years of the Church of Christ of Hutchinson, and were constant and devout in their attendance and worship. She knew and had confidence in the pastor of the church, Rev. Mr. Smith, and consulted with him about how to handle her property so as to provide for her present and future necessities and comforts. As a result of advice which he, and some of the defendants to whom he referred her, gave to her, she deeded her residence to defendants. The following resolution was adopted by the church congregation:

"WHEREAS, Margaret J. Denning has proposed to the Church of Christ of Hutchinson, Kan., a corporation, to transfer to it by general warranty deed, lots 39 and 41 on Fourth street east in the city of Hutchinson, Reno county, Kansas, as shown by the original plat thereof, upon consideration that said Church of Christ of Hutchinson, Kan., a corporation, shall pay to Margaret J. Denning during her lifetime, the sum of three hundred sixty dollars ($360)

per year, payable monthly, upon the first day of each and every month, beginning with January 1, 1923, and shall also pay her the sum of one hundred fifty-four dollars and sixty-two cents ($154.62) to reimburse her for taxes paid for the year 1922;

"*Now, therefore,* Be it resolved by the Church of Christ of Hutchinson, Kan., in open congregation assembled, that we do hereby accept the proposition of said Margaret J. Denning and do hereby authorize the board of trustees of this church to accept a general warranty deed from said Margaret J. Denning and file and record the same, and do authorize said board of trustees, or the proper authorities of this church, to·pay to the said Margaret J. Denning the sum of one hundred fifty-four dollars and sixty-two cents ($154.62) to reimburse her for taxes paid for the year 1922 on said property, and we do hereby authorize the said board of trustees of this church to make, execute and deliver to Margaret J. Denning an annuity bond in words and figures as follows:

## "ANNUITY BOND.

"WHEREAS, Margaret J. Denning, of Hutchinson, Reno county, Kansas, has donated to and transferred by general warranty deed to the trustees of the Church of Christ of Hutchinson, Kan., a corporation, the following-described real estate lying and situated in Reno county, Kansas, to wit (description inserted): of the present value of $5,000;

"*Now, therefore,* The Church of Christ of Hutchinson, Kan., a corporation, in consideration thereof, hereby agrees to pay to Margaret J. Denning, of Hutchinson, Kan., during her lifetime, an annuity of three hundred sixty dollars ($360) per year, payable in twelve (12) equal payments of thirty dollars ($30) each, payable on the first day of each and every month, beginning with January 1, 1923. Said payments to cease and determine upon the death of said Margaret J. Denning.

"WITNESS the hands of said corporation this 11th day of December, 1922. The Church of Christ of Hutchinson, Kan. (Signed by the individual members of the board of trustees.) (Seal.)

"And we do hereby pledge the property of this church as security for said indebtedness and direct the payment of thirty dollars ($30) per month to Margaret J. Denning, upon the first day of each and every month, beginning with January 1, 1923, to continue during her lifetime, said payments to cease and determine upon her death.

"Said resolution passed and adopted this 10th day of December, 1922. Leo C. Reeves, clerk of said church."

The trustees, to whom the property was deeded by plaintiff, sold it soon for $5,000, and have retained and invested the proceeds, and from the interest thereon paid Margaret J. Denning $30 per month as long as she lived. After her death they loaned $500 of it to the church, taking a note for the sum loaned; no part of it has ever been turned over to the church corporation. Soon after conveying her residence to defendants, Margaret J. Denning went to Ohio, where

she had relatives, with whom she lived. A guardian was appointed for her August 8, 1923. He took up the matter of the conveyance of her house to defendants and asked that it be rescinded. This proposition was rejected. She died May 6, 1924, leaving a will, which was duly admitted to probate.

The Church of Christ of Hutchinson was incorporated July 7, 1884, under our statutes pertaining to religious corporations. Its charter provides:

"That the purposes for which the corporation is formed are to support the Church of Christ at Hutchinson, and for the proclamation of the gospel to sinners."

Appellants first contend that this is an action for the recovery of money, and that they were entitled to a trial by jury as a matter of right (R. S. 60-2903). This must be determined by the pleadings. (*Lapham v. Oil and Gas Co.* 87 Kan. 65, 123 Pac. 863; *Boam v. Cohen,* 94 Kan. 42, 145 Pac. 559.) The pleadings in this case disclose that it is essentially an action for rescission of the agreement, whatever it was, by which Mrs. Denning conveyed her property to defendants, predicated upon the alleged mental incapacity of Mrs. Denning to comprehend the nature of the transaction, and the allegations of conduct by Rev. Mr. Smith, and others, amounting to fraud and undue influence, and the alleged illegality of the transaction. The answer joined issues on these allegations. These issues were properly triable to a court of equity, without the intervention of a jury. (*Rayl v. Brown,* 108 Kan. 385, 195 Pac. 611; *Fisher v. Rakestraw et al.,* 117 Kan. 441, 447, 232 Pac. 605; *Spena v. Goffe,* 119 Kan. 831, 241 Pac. 257.) The petition alleged that the property had been sold by defendants, who had the proceeds of the sale. The prayer for a money judgment for such proceeds, in connection with a prayer for equitable relief, is but a tracing of the fund which plaintiff contended was wrongfully obtained from Mrs. Denning, and does not have the effect of converting the action into one at law for a money judgment.

The trial court held that the contract was illegal; that the Church of Christ of Hutchinson had no corporate power or authority to make a contract such as it attempted to make in this case. Appellants complain of this ruling. It is erroneous. It is true that our statute (R. S. 17-202) provides the purposes for which private corporations may be formed are: ". . . (9) the insurance of human life and dealing in annuities . . ." Further provisions

relative to corporations for this purpose are found in R. S. 40-301; 40-320, and perhaps, in other sections of the statute. The Church of Christ of Hutchinson was not incorporated under these provisions of our statute, but under R. S. 17-202—(1) The support of public worship—and R. S. 17-1701 *et seq.*, which do not specifically authorize such corporations to deal in annuities. But that is not the end of the matter. Church organizations are supported by gifts and donations of various kinds. These may be outright gifts, or gifts to take effect in the future, and these may be made to depend upon contingencies, or may be made upon conditions. The fact that a gift is made upon condition that the donee pay to the donor a fixed or determinable sum, at stated intervals, for a stated or determinable time, does not render the gift illegal, even if the sum named is to be paid annually, and is called or might be classified as an annuity, and even though the church organization had no corporate power to deal in annuities. In such a case the fact that the condition of the gift is a payment by the donee to the donor of a sum annually, or periodically, is but an incident of the gift, and does not make the donee "dealing in annuities," as that term is used in our statute (R. S. 17-202 [9]). The donee is dealing in gifts, or in accepting gifts—a function clearly within its corporate powers (R. S. 17-601).

In *Sherman v. American Congregational Ass'n*, 113 Fed. 609, it was held:

"The fact that a religious association has by its charter certain enumerated powers does not bar it from complying with the terms of a legacy requiring it to pay an annuity, when such compliance is only incidental, and tends to the accomplishment of the substantial purposes of its incorporation."

See, also, *Burnes v. Burnes*, 137 Fed. 781; *Jones v. Brown et al.*, 156 Ga. 452; *Watrous v. Watrous*, 180 Ia. 884; *State Historical Society v. Foster*, 172 Wis. 155; *Patterson v. Vermillion Academy*, 312 Ill. 386, as bearing upon gifts in which as incident thereto the donee was to make payments annually or periodically for a time. It is evident the trial court based its decision largely upon the theory that the transaction was an illegal one. This is an error which requires a reversal of the judgment. The fact that the words "annuity" and "annuity bond" were used in the instruments executed by the church authorities should not be construed as classifying the transaction as "dealing in annuities." The use of those terms was inapt. It would have avoided confusion if the instruments prepared

in connection with the transaction had correctly described it as a conditional gift.

The real question in the case, under the pleadings, is whether a valid gift was made. This depends upon the issues joined as to Mrs. Denning's mental capacity to comprehend the nature of the transaction, and the allegations as to the conduct of Rev. Mr. Smith, and others representing the church organization, amounting to fraud and undue influence. This should be determined by the evidence pertaining thereto and in accordance with the principles of courts of equity in dealing with such questions. The fact that Rev. Mr. Smith, and those associated with him, were ambitious to get Mrs. Denning's property, or the value of it, to use for religious purposes, if that is shown to be a fact, would not justify them in overreaching her, or taking advantage of her, if the evidence discloses such was done. If the evidence warrants it, there should be·a judicious application of the principle of independent advice recognized by courts of equity, and which our legislature has written into the law of wills. (R. S. 22-214; *Flintjer v. Rehm,* 120 Kan. 13, 241 Pac. 1087, and cases there cited.) We are not expressing a view as to the evidence, or the weight of the evidence, upon this question; we carefully avoid doing so; that is a question for the trial court. We are simply endeavoring to point out the question upon which the case must turn, viz., Was there a gift (conditional or otherwise) of the property in question, intelligently and freely made? and to point out the legal principles to be applied, viz., the principles usually applied by courts of equity in such controversies.

Appellants contend that the evidence discloses a completed gift, and calls attention to the wording of the resolution passed by the church congregation and of the "annuity bond." As stated above, we are not passing on the evidence, but it seems clear this contention is an afterthought. Even in the original answer filed in this case, one of the contentions was that the transaction was a gift to be effective at the death of Mrs. Denning—although in an amended answer this was omitted. The trustees turned no part of the money to the church corporation during the lifetime of Mrs. Denning. Too much stress cannot be placed upon the wording of the resolution and of the "annuity bond" as binding Mrs. Denning, for it seems she was not present when the resolution was adopted; there is a controversy as to what she was told about it, and the "annuity bond" appears

not to have been delivered to her—at least it was in possession of one of the defendants as late as August 31, 1923, who then writing the guardian about it described it as a "contract in the form of a mortgage" for $5,000 on the church property. For the reasons just stated, the case of *Crawford v. Missionary Society,* 24 Oh. Cir. Ct. (n. s.) 95, cited and relied upon by appellants is not controlling.

The judgment of the court below will be reversed for a new trial in accordance with the views expressed in this opinion.